UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CATHAY SLIWA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 19 C 1392 |
| v. ) | |
| ) | Judge Thomas M. Durkin |
| WALMART, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Cathay Sliwa ("Ms. Sliwa") brings this negligence action under Illinois law against Walmart, Inc. ("Walmart") for injuries she sustained after she tripped on a fold in a floor mat at one of its Chicago stores. Walmart moved for summary judgment. R. 35. For the following reasons, that motion is denied.

**Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th

Cir. 2018). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## Background[1]

The following facts are undisputed unless otherwise noted. On January 7, 2017, Ms. Sliwa was attempting to make a purchase with her checkbook at the Walmart store located at 4626 West Diversey Avenue in Chicago, Illinois (the "Store") when she realized she had left her drivers license in her car. DSOF ¶ 10; PRDSOF ¶ 10. She proceeded through the exit vestibule with checkbook in hand to retrieve it, but tripped and fell on a fold in a floor mat in the process. DSOF ¶¶ 10-11, 27; PRDSOF ¶¶ 10-11, 27. Ms. Sliwa testified that she was "following the crowd," and looking ahead of her when she tripped, and specifically that she was not looking at the ground. DSOF ¶ 12 and Ex. 3 at 34, 42 (Sliwa deposition); PRDSOF ¶ 12.

Fellow customer Daniel Jaimez was exiting the Store behind Ms. Sliwa, and saw her trip and fall. DSOF ¶¶ 20, 22; PRDSOF ¶¶ 20, 22. Neither Mr. Jaimez nor Ms. Sliwa noticed the fold prior to Ms. Sliwa's fall. PSOAF ¶¶ 21-23; DRPSOAF ¶¶ 21-23. But afterwards, they each observed a fold about the height of a coffee cup,

---

[1] Walmart's statement of material facts, R. 36, is referred to as "DSOF;" Ms. Sliwa's response to Walmart's statement of material facts, R. 37-1, is referred to as "PRDSOF;" Ms. Sliwa's statement of additional facts, also at R. 37-1, is referred to as "PSOAF;" and Walmart's response to Ms. Sliwa's statement of additional facts, R. 39, is referred to as "DRPSOAF."

which Mr. Jaimez then pointed out to his wife.[2] DSOF ¶ 19 and Ex. C at 32-33, Ex. E at 22-23; PRDSOF ¶¶ 19, 23; PSOAF ¶ 24; DRPSOAF ¶ 24.

Video footage from the Store's security cameras beginning approximately an hour before Ms. Sliwa's accident depicts the fold from several angles and at varying heights. It also reflects that: several people left the Store in the period just ahead of Ms. Sliwa; a woman was pushing a shopping cart next to Ms. Sliwa and a grocery cart was positioned between the vestibule doors in front of Ms. Sliwa when she tripped and fell; and electronic machines lined the vestibule. PSOAF ¶¶ 11-12; DRPSOAF ¶ 11-12. But for the three-second period immediately prior to her fall, there was no one between Ms. Sliwa and the fold. R. 36-4 (video surveillance at time stamp 5:01:00-5:01:03); PRDSOF ¶ 21.

Although Walmart disagrees with respect to some of the customers, Ms. Sliwa contends and the video surveillance reflects that several other customers tripped or stumbled (but did not fall) on the fold during the minutes leading up to Ms. Sliwa's fall. PSOAF ¶¶ 1-6; DRPSOAF ¶¶ 1-6. Walmart contends that the fold was smaller then, and that the video footage shows other customers noticing and actively avoiding it. DRPSOAF ¶¶ 1-6; DSOF ¶ 25. While Ms. Sliwa argues that characterization is speculative, PRDSOF ¶ 25, the parties agree that in the minute immediately prior to

---

[2] In their depositions, Ms. Sliwa described the buckle as "five inches, maybe" and "huge," and Mr. Jaimez stated it was approximately 8 inches high or the height of a coffee cup. DSOF ¶¶ 18, 24; PRDSOF ¶¶ 18, 24. Because some coffee cups are about 5 inches tall, the Court assumes that was the height of the fold.

3

Ms. Sliwa's fall, other customers walked over the fold or otherwise did not appear to actively avoid it. PSOAF ¶ 8; DRPSOAF ¶ 8.

Numerous Walmart employees entered the vestibule in the hour prior to Ms. Sliwa's accident. But despite Walmart's expectation that they fix any slip, trip or fall hazard, none of them addressed the fold. PSOAF ¶¶ 14, 36; DRPSOAF ¶¶ 14, 36.

## Analysis

Walmart contends that summary judgment is proper because: (1) the fold created an open and obvious condition against which it had no duty to guard; and (2) the distraction exception to the open and obvious doctrine did not apply because Ms. Sliwa's distraction was self-created. R. 35. The Court begins with a preliminary matter concerning Local Rule 56.1 before addressing these arguments in turn.

### I.     Local Rule 56.1

At the outset, Ms. Sliwa asks the Court to deny summary judgment for Walmart because Walmart failed to strictly comply with Local Rule 56.1 insofar as it does not provide record cites for certain of its statements of fact, and cites directly to the record at times in its opening brief. R. 37 at 4-5, 15-16. Local Rule 56.1 requires a movant to support its statement of material facts with direct citations to the record. And while it generally directs parties to cite to the statement of material facts in their briefs, it does not expressly prohibit them from citing directly to the record. *See* L.R. 56.1(a). Yet in applying the rule "over the past fifteen years, decisions from this District have consistently articulated that requirement." *Mervyn v. Nelson Westerberg, Inc.*, 142 F. Supp. 3d 663, 664 (N.D. Ill. 2015). The Court acknowledges

4

its discretion to require strict compliance with Local Rule 56.1. *DeMichele v. United States*, 2008 WL 3855073, at *1 (N.D. Ill. Aug. 19, 2008). But because there is no confusion as to Walmart's version of the facts and the Court prefers to resolve matters on their substantive merits, it declines to deny Walmart's motion on this basis. *See Stevo v. Frasor,* 662 F.3d 880, 887 (7th Cir. 2011) ("[T]he decision whether to apply [Local Rule 56.1] strictly or to overlook any transgression is one left to the district court's discretion.").

## II.  Open and Obvious Condition

Generally, retailers have a duty of reasonable care to invitees under Illinois law to protect against foreseeable dangers on the premises. *Ward v. K-mart Corp.*, 554 N.E.2d 223, 232 (Ill. 1990). But a "possessor of land," like Walmart here, "is not liable to [its] invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them." *Bruns v. City of Centralia*, 21 N.E.3d 684, 690 (Ill. 2014). A condition is "known or obvious" when "both the condition and the risk are apparent to and would be recognized by a reasonable [person], in the position of the visitor, exercising ordinary perception, intelligence, and judgment." *Id.* If there is no dispute as to the physical nature of the condition, whether the dangerous condition is open and obvious is a question of law. *Id.* Otherwise, it is a question of fact for the jury. *Id.*

"Fire, height [from which one might fall], and bodies of water" are classic examples of open and obvious conditions. *Id.* But Illinois courts have also recognized as open and obvious (among other things): a hole in a parking lot, *Rexroad v. City of*

5

*Springfield*, 796 N.E.2d 1040 (Ill. 2003); a five-foot-tall concrete post outside a store entrance, *Ward v. K Mart Corp.*, 554 N.E.2d 223 (Ill. 1990); a high voltage power line in close proximity to an elevated billboard's walkway, *Am. Nat'l Bank & Trust Co. of Chi. v. Nat'l Advertising Co.*, 594 N.E.2d 313 (Ill. 1992); a rut in the ground on a construction site directly outside a portable bathroom, *Deibert v. Bauer Bros. Constr. Co. Inc.*, 566 N.E.2d 239 (Ill. 1990); and a defective sidewalk in front of a plaintiff's own home, *Sandoval v. City of Chi.*, 830 N.E.2d 722 (Ill. App. Ct. 2005).

Here, Walmart contends that there is no dispute about the floor mat's physical condition, and that it was open and obvious as a matter of law. Walmart points to Ms. Sliwa's and Mr. Jaimez's testimony about the size of the fold, the various angles of video surveillance depicting the fold, and argues that the video surveillance reflects some customers actively avoiding the fold. Walmart points to *DeMichele* in support. *See* R. 35; R. 38. But while the *DeMichele* court concluded that the folded mat in that case was open and obvious, the plaintiff in that case failed to comply with Local Rule 56.1, and the court thus deemed the government's facts admitted and declined to consider the plaintiff's additional facts as a result.[3] *DeMichele*, 2008 WL 3855073 at *1. In contrast, Ms. Sliwa has complied with the local rules and disputed the fold's visibility with her own testimony, that of Mr. Jaimez, and through the video evidence of other customers stumbling on the fold around the time she tripped (among other things). A dispute about a condition's visibility concerns its physical nature and is a

---

[3] Although the plaintiff in *DeMichele* did present the affidavit of a witness, the court declined to consider it on the basis that the witness lacked personal knowledge of the condition of the mats and it otherwise contained only legal conclusions. *Id.* at *6.

question of fact. *See Wilfong v. L.J. Dodd Const.*, 930 N.E.2d 511, 520 (Ill. App. Ct. 2010) ("where there is a dispute about the condition's physical nature, such as its visibility, the question of whether a condition is open and obvious is factual"); *see also Belluomini v. Stratford Green Condo. Ass'n,* 805 N.E.2d 701, 707 (Ill. App. Ct. 2004) ("obviously, the physical nature of the condition, especially its visibility, is a factual question"). And that's the case even if some customers did notice and actively avoid the fold, and notwithstanding that the fold is visible on the surveillance footage (none of which captures the fold from Ms. Sliwa's angle in any case).[4] *See Heisey v. Meijer Stores Limited Partnership*, 2018 WL 2193198 (N.D. Ill., May 14, 2018) (wet floor not open and obvious as a matter of law where video showed that some customers avoided the area and others did not and the parties disagreed about whether the placement of the "wet floor" signs clearly marked the area); *see also Figas v. Aldi, Inc.,* 2015 WL 9463700 (Ill. App. Ct. 2015) (denying summary judgment for Aldi because while "[t]he surveillance video contained in the record certainly calls the plaintiff's version of the events leading up to her fall into question, . . . for purposes of determining whether Aldi is entitled to summary judgment, we accept the plaintiff's recollection of the incident as true."); *Broustis v. Cardinal Health 200, LLC*, 2016 WL 5373196 (N.D. Ill. Sept. 26, 2016) ("The Court is obligated to draw all reasonable inferences in Plaintiff's

---

[4] Moreover, the Court's conclusion is not altered because Ms. Sliwa testified to have been looking straight ahead, rather than down. Indeed, as was the case with the floor mat fold in *Buchaklian v. Lake County Family Young Men's Christian Association*, viewed together, the evidence does not make the fold "so blatantly obvious" that Walmart "could not reasonably be expected to anticipate that invitees would fail to protect themselves from any danger posed by the condition of the mat." 732 N.E.2d 596, 601 (Ill. App. Ct. 2000) (citing *Ward,* 554 N.E.2d 223)).

favor, and, viewed in this light, the video footage lacks sufficient definition to justify summary judgment."). Accordingly, the fold was not open and obvious as a matter of law and summary judgment is improper.

## III. Distraction Exception

Even if a jury concludes that the fold was open and obvious, the duty inquiry would not end there. Two exceptions absolve a possessor of land from the protections of the open and obvious doctrine, and one—the so-called distraction exception—may apply here. Generally, that exception applies when a defendant has reason to expect that the "invitee's attention may be distracted, so that he will not discover that [the condition] is obvious, or will forget what he has discovered, or fail to protect himself against it." *Buchaklian*, 732 N.E.2d at 602. The applicability of the distraction exception turns on whether the defendant or the plaintiff created the distraction. *Savage v. Ritchie Bros. Auctioneers (Am.)*, 2012 WL 1520710, at *4 (N.D. Ill. Apr. 30, 2012). And if an invitee must look elsewhere to complete a task or avoid a hazard and then encounters the open and obvious condition, the distraction is foreseeable and the exception typically will apply. *See Deibert,* 566 N.E.2d at 243 ("Plaintiff could not look both places: up, to check for the possibility of flying construction materials; and down, to protect himself from tripping in a rut."); *see also Am. Nat'l Bank & Tr. Co. of Chi.,* 594 N.E.2d at 320 (distraction exception applied because worker "could not simultaneously look down at his feet and up at the overhead power line"). To that end, Illinois courts have found falling debris at a construction site and tasks such as delivering a piece of athletic equipment at a high school football field or carrying a

8

large item out of a store to constitute distractions that impose a duty on possessors of land. *Ward,* 554 N.E.2d at 233 (customer carrying large item); *Deibert,* 566 N.E.2d at 243 (falling debris at construction site); *Rexroad*, 796 N.E.2d at 1047 (Ill. 2003) (delivering athletic equipment on football field).

Here, the parties agree that Ms. Sliwa was distracted as she exited the Store, but disagree about the source of that distraction. Walmart contends that Ms. Sliwa was distracted by her own checkbook, pointing to her deposition testimony and the surveillance videos in support. R. 35 at 4-5. But Ms. Sliwa did not testify to that effect; instead, she consistently stated that she was "looking straight ahead" when she was walking out of the Store, and Walmart's statement of facts states as much. R. 36 ¶ 12; R. 36-3, Ex. B at 42, 87; R. 37-1 ¶ 12. Further, reasonable minds could differ on whether the video surveillance supports that Ms. Sliwa's checkbook as a distraction. The Court thus cannot conclude that Ms. Sliwa's distraction was self-created as a matter of law.

Even so, Walmart rightly points out that it is not enough to simply argue—without more—that something must have distracted Ms. Sliwa. *See* R. 35 at 5 ("the distraction exception will only apply where evidence exists from which a court can infer that plaintiff was actually distracted" (quoting *Bruns*, 21 N.E.3d at 691)). And Walmart contends that Ms. Sliwa's deposition testimony says nothing of the machines her statement of additional facts references, and does not state that the other customers or the cart in the vestibule doorway distracted her, either. But Ms. Sliwa's deposition testimony also cannot be read to preclude the possibility that she

was distracted by the machines in the vestibule, the several customers who exited with and before her, and/or the shopping cart partially blocking the exit. And none of these were of Ms. Sliwa's creation; instead, it was Walmart that funneled its customers into the vestibule area, and Walmart that filled that area with machines and other distractions. As such, it should have been foreseeable to Walmart that a customer entering that area may have his or her attention diverted due to the presence of those potential distractions, even assuming the fold was open and obvious in the first place.[5]

Accordingly, even assuming any jury in this case does conclude that the fold was open and obvious, a genuine issue of material fact exists as to whether Ms. Sliwa was distracted, and if so, whether the source of that distraction was self- or Walmart-created.

## Conclusion

For the reasons stated, Walmart's motion for summary judgment, R. 35, is denied.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

---

[5] Walmart also argues that Ms. Sliwa's failure to cite any authority concluding that a customer could serve as a distraction further dooms her claim. But because Walmart fails to cite any authority stating otherwise, and customers were not the sole potential distraction anyway, the Court declines to give that argument weight.

10

Dated: July 14, 2020